T.C. Memo. 2017-22

UNITED STATES TAX COURT

KEVIN CHEVES AND JENNIFER CHEVES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26218-13.                    Filed January 30, 2017.

Kevin Cheves, pro se.

Lawrence D. Sledz, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, Judge:  Respondent determined a deficiency of $5,839 in

petitioners' Federal income tax for 2011 and a penalty of $1,103 pursuant to

section 6662(a).[1]  Petitioners, Mr. and Mrs. Cheves, filed a timely petition for

_____

[1]All section references are to the internal Revenue Code in effect for the

(continued...)

[*2] redetermination with the Court pursuant to section 6213(a).  Mr. and Mrs.

Cheves resided in Florida at the time the petition was filed.  After concessions,[2]

the issues for decision are whether petitioners are liable for (1) Federal income tax

on unreported distributions from their retirement accounts, (2) the 10% additional

tax on early distributions prescribed in section 72(t), and (3) a negligence penalty

under section 6662(a) of $787.

## FINDINGS OF FACT

After 17 years in the construction industry, Mr. Cheves lost his job in 2010.

For the next year and a half he remained unemployed.  In mid-2011 he found a job

resulting in roughly $12,000 of earned income during that year.[3]  Finding this

income and unemployment compensation to be insufficient to cover the family's

---

[1](...continued)
year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[2]Respondent has conceded that petitioners' unreported income totals $15,221, not the $16,203 determined in the notice of deficiency.  The penalty was not calculated in accordance with this Court's decision in Rand v. Commissioner, 141 T.C. 376 (2013).  Rand applies despite the Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, div. Q, sec. 209, 129 Stat. at 3084 (2015), because the return was filed before 2015.  Respondent concedes that the correct penalty amount is therefore lower than that determined in the notice of deficiency.

[3]The record is less clear about Mrs. Cheves' employment situation, but it appears she also lost her job and eventually was rehired at around half of her previous salary.

[*3] bills, Mr. Cheves depleted his personal savings. After the personal savings were exhausted, petitioners began withdrawing funds from their retirement accounts. Both petitioners were under age 59-1/2 when they received the withdrawals. Mrs. Cheves withdrew $4,091 from her investments. Withholding from these funds of $818 was enough to cover the section 72(t) additional tax.

Mr. Cheves turned to his insurance agent to withdraw funds from his traditional individual retirement accounts (IRAs) and other investments. Mr. Cheves withdrew funds as necessary from different accounts at irregular intervals and in varying amounts, totaling $27,721 between March and August of 2011. Mr. Cheves asked his insurance agent to withhold additional amounts in order to pay any additional taxes triggered by the early withdrawals. Amounts were withheld from only $3,221 of Mr. Cheves' withdrawals, however; nothing was withheld from the $24,500 balance. During this time Mr. Cheves was also making payments to the insurance agent and mistakenly believed that some of these funds were reimbursements for funds withdrawn from his IRAs.

Mr. Cheves prepared and filed petitioners' 2011 tax return. When determining the amounts of withdrawals to be reported, Mr. Cheves relied on two Forms 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. These forms showed only the

[*4] $4,091 withdrawn by Mrs. Cheves and $12,500 of the amount withdrawn by Mr. Cheves. Mr. Cheves did not ask his insurance agent for a total of his withdrawals or compare his bank and account statements to verify that the amounts reported on the Forms 1099-R were correct. Therefore, Mr. Cheves undercalculated their total income by $15,221. Rather than correctly calculating the tax due, Mr. Cheves calculated that petitioners were entitled to a $3,363 refund for tax year 2011.

Respondent contends that petitioners owe income tax and the section 72(t) additional tax on the $15,221 of unreported income. Respondent also contends that increasing petitioners' income leads to several computational adjustments to their return. Finally, respondent contends that petitioners' underreporting merits the addition of a section 6662(a) negligence penalty.

Petitioners concede that they received the $15,221 in early retirement withdrawals. They contend, however, that they honestly believed the amount reported was correct, that taxes had been withheld from all withdrawals, and that the 2011 underreporting was a one-time error in more than 30 years of tax filing. Furthermore, petitioners submitted their bank records to prove that the retirement funds were withdrawn to cover only basic necessities. Finally, petitioners contend they cannot pay the proposed tax and penalties.

**[*5]**                                        OPINION

Section 61(a) provides that "gross income means all income from whatever source derived". Distributions from a qualified retirement plan normally constitute gross income subject to Federal income tax. See secs. 61(a) and (b), 72(a)(1), (e), 408(d)(1); see also Arnold v. Commissioner, 111 T.C. 250, 253, (1998). Section 408(d) provides several exceptions to the general rule that distributions from an IRA shall be included in gross income (e.g., for rollover contributions, transfers incident to divorce, and distributions for charitable purposes). See sec. 408(d)(3), (6), (8). There is no exception to the general rule, however, for ordinary living expenses during times of economic hardship. See sec. 408(d).

Petitioners agree that they withdrew the funds from their retirement accounts. Petitioners also agree, and the record shows, that they withdrew more from their retirement funds than they reported on their 2011 income tax return. Petitioners do not contend that these funds came from nontaxable sources such as a Roth IRA. Petitioners instead request that their tax liability be forgiven in consideration of their many years of proper reporting. While we applaud petitioners' satisfaction of their obligation to report their income in the past, we are obligated to follow the statute as written and do not have the authority to waive

[*6] reporting requirements mandated by law. There is no exception for economic hardship to the rules of income inclusion cited above. Consequently, we must conclude that the amounts withdrawn from petitioners' retirement funds are includible in income.

Additionally, if a taxpayer receives a distribution from a qualified retirement plan before attaining age 59-1/2, section 72(t) imposes an additional tax equal to 10% of the portion of the distribution which is includible in the taxpayer's gross income. Sec. 72(t)(1) and (2)(A)(i). The additional tax is intended to discourage taxpayers from taking premature distributions from retirement plans--actions that frustrate public policy encouraging saving for retirement. See El v. Commissioner, 144 T.C. 140, 148 n.13 (2015); Dwyer v. Commissioner, 106 T.C. 337, 340 (1996) (citing and discussing the legislative history of section 408(f), the predecessor to section 72(t)); Milner v. Commissioner, T.C. Memo. 2004-111. Distributions made to the taxpayer for certain purposes are excluded from this additional tax. See sec. 72(t)(2)(A)-(G). Using funds to meet basic living expenses during economic hardship is not one of these purposes. See id.

Again, petitioners do not dispute that they withdrew the funds. Petitioners also do not dispute that they have not yet reached 59-1/2 years of age. Petitioners have not contended or provided evidence to show that they used the funds

**[\*7]** received from the distributions for any of the purposes listed in section 72(t). We appreciate that petitioners withdrew the funds to pay for basic necessities and not to live a life of luxury or enrich themselves. However, because there is no economic hardship exception to the section 72(t) additional tax, the tax applies to petitioners' early withdrawals from their retirement accounts.

Finally, respondent determined that the petitioners are liable for a penalty pursuant to section 6662(a). Section 6662(a) and (b)(1) and (2) provides for a penalty equal to 20% of any underpayment due to negligence or intentional disregard of rules and regulations or a substantial understatement of income tax. Negligence is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). It is also a failure to reasonably attempt to comply with the Internal Revenue Code. Sec. 6662(c).

However, section 6662(c) provides that no penalty shall be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Swihart v. Commissioner, T.C. Memo. 1998-407. Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that

**[*8]** may indicate reasonable cause and good faith include an honest misunderstanding of fact or law which is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer. Id.

Petitioners reasonably attempted to comply with the Internal Revenue Code and acted in good faith. Mr. Cheves asked his insurance agent to withhold any additional tax due because of the early withdrawals from his retirement accounts. Petitioners reported the amounts shown on two Forms 1099-R received, one for each petitioner. Each unreported amount is not insignificant, but we believe that petitioners' changed economic circumstances contributed to their error and confusion. Petitioners' withdrawals were made from multiple accounts, at irregular times, and in varying amounts. Most importantly, Mr. Cheves mistakenly believed payments to his insurance agent constituted reimbursements mitigating the effect of early withdrawals. We conclude that considering petitioners' background and circumstances, they acted reasonably and are therefore not liable for the penalty under section 6662(a).

In reaching our holdings herein, we have considered all arguments made and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

**[*9]**   To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.